<u>**NOT FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

| | |
|---|---|
| _____ : | |
| WILLIAM MCDANIEL,                      : | |
|                                        : | |
|              Plaintiff,                : | |
|                                        : | Civil Action No. 05-5865 (JAG) |
|              v.                        : | |
|                                        : | **OPINION** |
| BOROUGH OF NORTH CALDWELL;             : | |
| JOHN S. KOSKO; FRANK A. ZICHELLI,      : | |
|                                        : | |
|                                        : | |
|              Defendants.               : | |
| _____: | |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the unopposed motion for summary judgment filed by Defendants the Borough of North Caldwell (the "Borough"), John S. Kosko ("Kosko"), and Frank A. Zichelli ("Zichelli," and, collectively with the Borough and Kosko, "Defendants"). For the reasons explained below, this Court shall grant Defendants' motion.

### I. **BACKGROUND**

Plaintiff William McDaniel ("McDaniel") was an employee at the Department of Public Works (the "DPW") for the Borough. McDaniel was also a member of Teamsters Union Local 469 (the "Union"). Zichelli, the Borough Engineer, holds supervisory responsibilities at the DPW. (Aff. of Zichelli ¶ 2.) At the time of McDaniel's termination, Kosko was the Borough Administrator. (Aff. of Kosko ¶ 3.) Although Kosko was not a supervisor, he was responsible

for the performance of all Borough employees.  (Id.)

On August 24, 2004, McDaniel entered into Zichelli's office after officers from the North Caldwell Police Department approached him for questioning regarding a DPW misconduct investigation concerning the fraudulent use of time cards.[1]  At the time, McDaniel's demeanor was agitated and angry.  He shoved the main office door open and shouted at Zichelli, at times using profanities.  On August 26, 2004, McDaniel was terminated.

McDaniel and the Union's shop steward filed a grievance on or about August 30, 2004.  An arbitration hearing was scheduled for March 10, 2005.  After the hearing, the Arbitrator concluded that McDaniel had committed a "major offense" within the meaning of the applicable collective bargaining agreement; however, he modified and downgraded McDaniel's punishment to a major suspension extending from August 26, 2004 to April 18, 2005.  The Arbitrator also noted that "if he commits such an act of misconduct again in the future, it is doubtful that any arbitrator will deny the employer's decision to discharge the grievant."  (Def. Br. Exh. D at 23.)

After returning to work, McDaniel filed a complaint of discrimination with the New Jersey Division of Civil Rights and the Equal Employment Opportunity Commission (the "EEOC") on July 8, 2005.  The filing alleges that McDaniel experienced discriminatory treatment because of his race and disability.  McDaniel also alleged that his employer retaliated against him for filing a grievance with the Union, by suspending him from work, denying him back pay for the period of suspension, denying him benefits and a promotion, and engaging in harassing behavior.

_____

[1]  McDaniel was not identified as one of the employees upon whom the investigation centered.  (Def. Br. Exh. D at 5.)

On September 16, 2005, the EEOC issued a notice stating that it declined to find that McDaniel's allegations constitute violations of the applicable statutes.  On September 19, 2005, the EEOC issued a right to sue letter.

On November 29, 2005, McDaniel disregarded a direct order from DPW Foreman William Stickles ("Stickles") and acted in a loud and hostile manner towards him.  Stickles and Senior Roadman Robert Miscia reported McDaniel's misconduct to Kosko, and submitted handwritten statements describing the incident.  Zichelli, Kosko and David Paris, Esq., an attorney for the Borough, met on November 30, December 1, and December 2 of 2005 to discuss McDaniel's behavior.  Parenthetically, on December 2, 2005, the Newark Police Department notified the Borough that McDaniel had been arrested for possession of a handgun.

On December 5, 2005, at or around 8:00 a.m., Kosko handed to McDaniel a letter informing him of his termination.  (Def. Br. Exh. C.)  After McDaniel was terminated, Kosko and McDaniel exchanged words outside the Borough Hall.  Kosko then informed McDaniel that there was no need to speak.  He walked towards McDaniel's car, and urged McDaniel to move along.

On the same day as his termination, McDaniel filed a grievance with the Union complaining about his termination.[2]  McDaniel filed the first Complaint in this Court on December 16, 2005 (the "First Complaint"), arguing that his termination was discriminatory and that he had been subjected to "reprisals and retaliation placed in a work hostile [sic] environment because of my skin color, race and my personal briefs [sic]."  (First Compl. 3.)  The First

_____

[2] On July 5, 2006, the Union formally declined to carry McDaniel's grievance to the arbitration level.

3

Complaint also alleges that Kosko "attacked [McDaniel's] car window in front of Borough Hall" on December 5, 2005, and that Kosko and Zichelli harassed him for "calling OSHA,[3] [and the] E.E.O.C. civil rights . . . ."  (Id.)

On January 10, 2006, McDaniel filed another complaint with the New Jersey Division of Civil Rights and the EEOC, alleging that he was discriminated against because of his race and disability, and retaliated against as a result of his prior EEOC filing.  On March 27, 2006, the EEOC issued a notice explaining that it was closing McDaniel's January 2006 complaint because McDaniel had filed a claim in court earlier.  On September 20, 2006, McDaniel then filed a second Complaint (the "Second Complaint"), which alleged that he was "terminated while injured on the job," and that he was "subjected to reprisal and retaliation on the basis of his color."  (Second Compl. 3.)  On October 5, 2006, this Court consolidated the two Complaints under the instant Action.[4]  Defendants then filed a motion for summary judgment on March 30, 2007.

## II.  LEGAL STANDARD

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party

---

[3]  On August 11, 2004, Robert Sexton of the New Jersey Department of Labor inspected a Borough of North Caldwell construction site in response to a complaint made that day regarding a trenching and shoring condition at the site.  Mr. Sexton did not know, and thus did not inform the Borough, of the name of the complainant.  After reviewing the grievance McDaniel filed with the Union in August of 2004, the Borough discovered that McDaniel allegedly had filed the August 2004 complaint with the New Jersey Department of Labor.

[4]  It is unclear whether McDaniel received a right to sue letter prior to filing the Second Complaint.  Nevertheless, because he is a pro se plaintiff, this Court shall, out of an abundance of caution, consider all allegations in both the First Complaint and the Second Complaint when resolving this motion for summary judgment.  See Rhett v. Disman, 228 Fed. App'x 225, 227 (3d Cir. 2007).

demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.  Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P.

56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

"If the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Foster v. Morris, 208 Fed. App'x 174, 179 (3d Cir. 2006). This Court will not grant the entry of summary judgment without considering the merits of the unopposed motion.[5] See Virgin Records Amer., Inc. v. Trinidad, 2007 WL 4264543, at *3 (D.N.J. Dec. 3, 2007) (citing Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991).

## III. ANALYSIS

Plaintiff alleges in the Complaint that he was "subjected to reprisal and retaliation [and] placed in a work hostile enviornment [sic] because of my skin color, race, and my personal briefs [sic]." (First Compl. 3.) He also alleges that he was wrongfully terminated "while injured on the job." (Second Compl. 3.) "A document filed pro se is to be liberally construed, . . . and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citation omitted). This Court shall liberally construe the Complaints as alleging a discrimination claim, a retaliation claim, and a hostile work environment claim under both Title VII and the New Jersey Law Against Discrimination (the "NJLAD").[6]

---

[5] McDaniel did not file any opposition papers in response to Defendants' motion for summary judgment. This Court shall accept as true all facts raised in the Rule 56.1 Statement of Facts. See Purdy v. Pa. Public Utility Comm'n, 2007 WL 3237458, at *1 (M.D. Pa. Oct. 30, 2007); Virgin Records, 2007 WL 4264543, at *3.

[6] Defendants argue that, to the extent this Court recognizes the Complaint as articulating claims under the New Jersey Consciencious Employee Protection Act ("CEPA") or under the

### A.   Discrimination Claim

The Supreme Court set forth in <u>McDonnell Douglas</u> a burden-shifting method of proof used to analyze Title VII claims.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). To establish a prima facie case of discrimination under Title VII, a plaintiff must demonstrate that (1) the plaintiff belongs to a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action despite being qualified; and (4) after the adverse employment action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position.[7]  <u>Id.</u>; <u>Scheidemantle v. Slippery Rock Univ. State Sys. of</u>

New Jersey Workers' Compensation statute, these claims are legally deficient.  CEPA requires a plaintiff to show (1) he reasonably believed that an activity, policy, or practice of the employer violated the law; (2) he objected to or complained about the activity, policy, or practice; (3) retaliatory action was taken against him; and (4) there was a causal link between the plaintiff's action and the retaliatory action.  <u>Reynolds v. TCM Sweeping, Inc.</u>, 340 F. Supp. 2d 541, 545 (D.N.J. 2004).  McDaniel may not, however, allege retaliation claims arising out of the same facts under both CEPA and the NJLAD.  <u>Id.</u> ("The waiver provision of CEPA can prevent a former employee from pursuing both a CEPA claim and other causes of action for retaliatory discharge under law . . . .")  As explained *infra* in Section III, B of this Opinion, McDaniel would have difficulty proving the causation element.  Consequently, this Court will decline to identify a CEPA claim in the Complaints.  <u>See</u> <u>Notte v. Merch. Mut. Ins. Co.</u>, 902 A.2d 352, 355 (N.J. Super. Ct. App. Div. 2006) (holding that "there is no CEPA waiver where the CEPA claim is not legally cognizable").

McDaniel also cannot allege a discrimination claim under the New Jersey Workers' Compensation statute.  McDaniel neither alleged nor set forth facts showing that he filed a worker's compensation claim, attempted to file a claim, or claimed workers' compensation benefits in the form of medical care.  <u>See</u> <u>Carter v. AFG Indus., Inc.</u>, 782 A.2d 967, 971 (N.J. Super. Ct. App. Div. 2001) (stating that an employee need not file a formal worker's compensation claim in order to allege discrimination under the Workers' Compensation statute). Indeed, the record does not include any facts supporting McDaniel's assertion that he suffered an on-the-job injury.  To the extent this Court chose to recognize claims under either CEPA or the Workers' Compensation statute, those claims would not withstand Defendants' summary judgment motion.

[7]  An analysis of an employment discrimination claim under the NJLAD parallels the analysis conducted under Title VII.  <u>See</u> <u>Goodman v. London Metals Exch. Inc.</u>, 429 A.2d 341, 347 (N.J. 1981) ("Because of the express policy underlying the statute and the difficulty in

Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006).  "[T]here is a low bar for establishing a prima facie case of employment discrimination."  Scheidemantle, 470 F.3d at 539.  If plaintiff succeeds in setting forth a prima facie case for discrimination, the burden then shifts to the defendants to show a legitimate, nondiscriminatory reason for the adverse employment action.  McDonnell Douglas, 411 U.S. at 802.  If defendants can point to such a reason, the burden then shifts back to the plaintiff to prove that defendants' explanation was in fact pretextual.  Id.

Here, McDaniel cannot set forth a prima facie case of discrimination on the basis of his personal beliefs.  Plaintiff has not set forth any evidence describing his personal beliefs or showing that his personal beliefs classify him as a member of a protected category.  Shelton v. Univ. of Med. & Dentistry of N.J., 223 F.3d 220, 224 (3d Cir. 2000) (stating that the first element of plaintiff's prima facie case for religious discrimination requires a demonstration that plaintiff's belief or practice is a bona fide religious belief).

Likewise, assuming *arguendo* that McDaniel in fact suffered an on-the-job injury, the injury would not place him in a protected category under Title VII.  Consequently, McDaniel's claim that he was wrongfully terminated "while injured on the job" does not constitute a cognizable discrimination claim.

McDaniel also has not set forth sufficient evidence to establish a prima facie case of discrimination on the basis of his color.  The EEOC complaint indicates that McDaniel is black and that McDaniel's termination may qualify as an adverse employment action.  Nevertheless,

_____

proving an individual's intent or motive, we chose in Peper v. Princeton University Board of Trustees, 389 A.2d 465 [(N.J. 1978)], to adopt the methodology of McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), and commended the McDonnell Douglas standards to our trial courts as a starting point in actions brought under the Law Against Discrimination.").

there exists no evidence in the Rule 56.1 Statement of Facts demonstrating that McDaniel was qualified for his position, or that the Borough sought to fill his vacant position by hiring an individual with similar qualifications.  Without such evidence, McDaniel cannot satisfy the threshold for establishing a prima facie case.

Even if this Court found that McDaniel had set forth sufficient facts to satisfy the prima facie elements, McDaniel has neither alleged nor proven any facts demonstrating that Defendants' legitimate, nondiscriminatory explanation is pretextual.  Defendants point to three facts supporting its contention that McDaniel's discharge was not discriminatory: (1) McDaniel's 2004 suspension; (2) McDaniel's insubordinate and aggressive behavior during the November 29, 2005 incident; and (3) McDaniel's arrest for possession of a handgun on December 2, 2005. The record does not include any evidence that would permit this Court to infer that there exists a triable issue of fact as to whether Defendants' proffered explanations constitute pretext.  In the absence of such evidence, this Court is compelled to enter judgment in favor of Defendants for McDaniel's discrimination claims.

**B.**     **Retaliation Claim**

McDaniel alleges in the First Complaint that his termination constitutes retaliation for contacting OSHA and filing an EEOC complaint.  To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) the plaintiff engaged in protected activity; (2) the defendant took an adverse employment action against the plaintiff; and (3) a causal link exists between the protected activity and the adverse action.[8]  See Weston v. Pennsylvania, 251 F.3d 420, 430 (3d

---

[8]  Retaliation claims under Title VII and the NJLAD require proof of the same prima facie test.  See Abramson v. William Patterson College of N.J., 260 F.3d 265, 286 (3d Cir. 2001). When describing the elements applied under the NJLAD, "[t]he actual language used by the New

Cir. 2001); Kachmar v. SunGard Data Sys. Inc., 109 F.3d 173, 177 (3d Cir. 1997).

Defendants concede that McDaniel engaged in protected activity by contacting OSHA to report an alleged violation and by filing an EEOC complaint.  (Def. Br. 13.)  However, even though McDaniel's termination constitutes an adverse employment action, McDaniel has set forth no evidence demonstrating a causal link between his protected activity and his termination. While the temporal proximity between plaintiff's protected activity and his termination may create an inference of causation, see Jalil v. Avdel Corp., 873 F.3d 701, 708 (3d Cir. 1989), such is not the case here.

Prior to McDaniel's first termination, the Borough was unaware that McDaniel had contacted OSHA to file a complaint, and McDaniel had not filed the EEOC complaint.  (Zichelli Aff. ¶¶ 3-4.)  McDaniel's second termination occurred more than a year after Defendants had discovered McDaniel's role in the OSHA complaint, and five months after McDaniel had filed the EEOC complaint.  "Courts in this circuit have consistently held that the plaintiff has not met his burden of proving a causal link in cases where there is a lengthy gap between a protected activity and an alleged retaliatory act."  Hudson v. Pa. Tpk. Comm'n, 1996 WL 668524, at *11 (E.D. Pa. Nov. 14, 1996); see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) ("a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment"); Harley v. McCoach, 928 F. Supp. 533, 542 (E.D. Pa. 1996) (declining to find that plaintiff fulfilled the causation element where the adverse employment action occurred nine months after the protected

_____

Jersey courts, with respect to the first prong, is that an employee must show that he or she engaged in protected activity *known by the employer*."  Id. at 286 n.17 (citing Craig v. Suburban Cablevision, Inc., 660 A.2d 505, 508 (1995)) (emphasis in original).

activity, and noting that "other courts generally hold that if at least four months pass after the protected activity without employer reprisal, no inference of causation is created"). Without pointing to any other evidence to fulfill the causation element, McDaniel cannot prove that his protected activity precipitated his termination. No genuine issue as to a material fact exists for resolution, and therefore Defendants' motion for summary judgment on this claim must be granted.

**C.      Hostile Work Environment Claim**

This Court shall also grant judgment in favor of the Defendants as to McDaniel's hostile work environment claim. In order to establish a hostile work environment claim under Title VII, McDaniel must show that (1) he suffered intentional discrimination because of his race or color; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability.[9] Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001).

Upon examining both Complaints, this Court finds that McDaniel arguably raised three allegations as bases for his hostile work environment claim: (1) Zichelli verbally attacked him on August 24, 2004; (2) Kosko attacked his window on December 5, 2005; and (3) Defendants harassed him for contacting OSHA and filing an EEOC complaint. (First Compl. 3.)[10] However, none of these allegations is supported by competent evidence, or any evidence at all. See FED. R.

_____

[9] "Because the hostile work environment analyses for Title VII claims and NJLAD claims are strikingly similar[,] the Court will analyze both simultaneously." Grazioli v. Genuine Parts Co., 409 F. Supp. 2d 569, 576 n.10 (D.N.J. 2005).

[10] The Second Complaint does not allege any facts relevant to a hostile work environment claim.

Cɪᴠ. P. 56(e) (stating that the party opposing the motion for summary judgment may not rely upon mere allegations raised in its pleadings); <u>Anderson</u>, 477 U.S. at 248.  McDaniel offers no explanation as to how these incidents constitute discrimination on the basis of his race or color. McDaniel's baseless allegations in the Complaints do not suffice to create any genuine issues as to any material facts.  This deficiency requires this Court to enter judgment in favor of Defendants on McDaniel's hostile work environment claim.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion for summary judgment shall be granted as to all claims alleged in the Complaints.  Judgment shall be entered in favor of the Defendants.


   S/Joseph A. Greenaway, Jr._____
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Dated: December 26, 2007